J. E. STRONG AND STELLA STRONG, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1909.   Promulgated March 5, 1927.

*C. F. Spencer, Esq.,* for the petitioners.

*Bruce A. Low, Esq.,* for the respondent.

This is a proceeding to redetermine deficiencies in income tax for 1919 in the following amounts: J. E. Strong, $624.05; Stella Strong, $680.97. In the petition there are six assignments of error, three of which were abandoned at the hearing. The remaining three are, in substance, that the Commissioner erred (1) in including in income of J. E. Strong certain unexplained bank deposits; (2) in disallowing in part contributions to churches; and (3) in disallowing the deduction as a loss of $1,000 subscribed by Strong to an enterprise known as the Red River Valley Oil Co.

FINDINGS OF FACT.

The petitioners are husband and wife and reside in Wichita Falls, Tex. In the taxable year they made separate returns of community income.

The husband was in the business of buying and selling oil leases. He also bought and sold oil stock on the exchange on his own account and for others. He kept no books of account. He used a single bank account through which funds of others as well as his own funds were handled in buying and selling stock. Some of the purchases and sales of stock were cash transactions. He kept no record of any of the stock transactions and his income-tax return was made from memory. A revenue agent checked up his bank account and as a result the Commissioner added to income $1,867.43.

In the taxable year the petitioners contributed to the Christian Church at Wichita Falls, $10 per month, or a total of $120.

In that year, J. E. Strong and a number of other individuals, associated under the name of Red River Valley Oil Co., acquired a lease of land in Montague County, Texas, in so-called wildcat territory, for the purpose of prospecting for oil. It was not a corporation. They sank a well to a depth of 2,000 feet, discovered

no oil, and abandoned the project. The lease was then allowed to be forfeited as being of no value. Strong subscribed $1,000 to the enterprise, but paid in only $500. After the abandonment of the enterprise there remained in the hands of a trustee unused funds of about $200. Several years later the trustee bought a lease and sold it at a profit, and in a final distribution made in 1925, Strong received $80 as his share. The group, as such, did nothing between the time the original lease was forfeited and the date the other lease was purchased several years later.

### OPINION.

LOVE: The issues involved in this case are purely issues of fact. When a petitioner keeps no records of his business transactions he is frequently left without means of proving exact conditions, and his memory is not sufficiently exact to enable him to supply the want of record evidence. Such is the situation in the instant case.

In 1919, the petitioner, J. E. Strong, paid in $500 to the Red River Valley Oil Co. In the same year, the company brought in a dry hole and abandoned the proposition as condemned territory. Strong got back no part of his $500 investment, except that in 1925 as a result of the purchase and sale of another lease by the trustee, on which deal a profit was made, he received as his part $80. We think it is clear that he lost his investment of $500 in 1919.

The petitioner claims to have contributed $350 to churches and other benevolent organizations in 1919. At the hearing he was able to point out specific contributions to the extent of only $10 per month, to which amount he swore. He should be allowed as a deduction the amount so identified—$120.

With reference to the contention in regard to the adjustment of income as a result of an audit of petitioner's bank account, that issue is much more complicated and very much less clear. The petitioner testified that of his friends' moneys he deposited to the credit of his own account not less than $2,000. The Commissioner allowed him as offset for "other stocks," $2,690. The petitioner contends that the offset allowed by the Commissioner only took care of miscellaneous stock bought and sold on his own account, and did not take care of that bought and sold for his friends. But he was wholly unable, or at least failed, to point out and identify what stock transactions were included. The record on this question does not justify us in disturbing the determination of the Commissioner as to that contention.

*Judgment will be entered on 15 days' notice, under Rule 50.*